IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KELLY ANTHONY WILLIAMS, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-15-1969 |
| ATF, | * | |
| Defendant | * | |

\*\*\*

## MEMORANDUM OPINION

After requesting documents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") three times under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552,[1] and not receiving any response, Plaintiff Kelly Anthony Williams filed suit against AFT. Compl., ECF No. 1; *see* Supp., ECF No. 4. ATF has moved for summary judgment, insisting that it properly withheld some information but otherwise disclosed the documents requested. ECF No. 29.[2] Because ATF's response to Williams's renewed request was reasonable and complied with the FOIA, ATF's motion shall be granted.

**I.      Background**

      **A.      Complaint Allegations**

---

[1] Although Williams asserts that he sought documents under the Maryland Public Information Act ("MPIA"), Md. Code Ann., Gen. Prov. §§ 4-101 – 4-601, the MPIA does not apply to ATF, a federal agency, *see Pair v. Soc. Sec. Agency*, No. RDB-15-1458, 2016 WL 739188, at \*1 n.1 (D. Md. Feb. 25, 2016), and therefore I have construed Williams's claims as brought under the FOIA. *See* ECF No. 5.

[2] ATF filed a memorandum in support, ECF No. 29-1, Williams filed an opposition, ECF No. 31. ATF has not filed a response, and the time for doing so has passed. *See* Loc. R 105.2. A hearing is not necessary. *See* Loc. R. 105.6.

Williams, who is an inmate committed to the custody of the Maryland Department of Public Safety and Correctional Services and confined at Maryland Correctional Institution – Hagerstown, claims that he first requested documents from the ATF in December of 2013. Compl. 1–2. According to Williams, the documents he sought relate to a criminal case against him and the seizure of his girlfriend Keri Crews's shotgun from his apartment. *Id*. at 2. He requested "any information relayed to or from the Anne Arundel County Police in Maryland," as well as "any report on Keri Crews," who was a possible witness in his criminal trial. *Id*. He never received a response. *Id*.

Williams states he "wrote a simplier [sic] request" in March of 2014. *Id*. He did not receive a response to that request, either. *Id.*

In October of 2014, Williams sent a third request for the same information by certified mail. *Id.* He claims that "if the ATF is withholding this information intentionally they are impending justice and in violation of the MPIA and FOIA." *Id.* At the time Williams filed suit, he had not received a response to his requests from the ATF. *Id*.

Williams seeks monetary damages in the amount of $500,000 "for the pain and suffering caused from impeding justice for the last 20 months." Compl. 3. He also seeks an injunction ordering the ATF to provide him with "copies of all ATF reports, interviews, search warrants, information, records collected, prepared or maintained, to or from the Anne Arundel County Police in Maryland, pertaining to" himself and Crews. *Id.*

B.  Procedural History of this Case

ATF initially filed a Motion to Dismiss the Complaint, ECF No. 11, accompanied by an affidavit in which Stephanie M. Boucher, Chief of ATF's Disclosure Division, stated that a search of ATF's records did not show any receipt of Williams's request. Jan. 5, 2016 Boucher

Decl. ¶¶ 6–7, ECF No. 11-2. In response, Williams filed a copy of the FOIA requests he had sent to ATF. ECF No. 13. The ATF then requested and was granted a stay of these proceedings to process the FOIA requests. ECF Nos. 16 and 17. After receiving a renewed request from Williams and processing that request, details of which are set forth below, ATF filed the pending Motion for Summary Judgment.

    C.    ATF's Response to Williams's FOIA Requests

When reviewing Williams's requests, the ATF sent him a letter advising that in order to obtain records about himself and Crews, he would need to fill out a Form DOJ-361s ("Certification of Identity") and return it to the ATF. June 29, 2016 Boucher Decl. ¶ 4, Def.'s Ex. 1B.[3] On July 14, 2016, the ATF received Williams's July 4, 2016 renewed FOIA request, along with a completed Form DOJ-361s.[4] July 4, 2016 Req., Def.'s Ex. 1-C. The Disclosure Division of the ATF acknowledged receipt of those documents by letter dated July 15, 2016. July 15, 2016 Ltr., Def.'s Ex. 1-D.

On August 31, 2016, the Disclosure Division identified 162 pages of documents in response to Williams's request. Aug. 31, 2016 Ltr., Def.'s Ex. 1-E. Of the 162 pages identified, 33 pages were disclosed in full; 68 pages were released in part; 56 pages were withheld in full (22 pages of the withheld documents were duplicates); and 5 pages were referred to the Federal

---

[3] All but one of ATF's exhibits, including declarations that Boucher previously submitted, appear in ECF No. 29-2 as attachments to the February 13, 2017 Boucher Declaration filed in support of ATF's summary judgment motion. The one exception is the Index of Documents Released to Williams ("*Vaughn* Index"), ECF No. 29-3. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[4] In the interim, Williams filed correspondence in this case seeking the Court's advice on the necessity of filling out the form required by the ATF. ECF No. 19. I informed Williams that I am prohibited from providing legal advice and recommended that he consult with an attorney. ECF No. 20. Upon ATF's suggestion, I stayed these proceedings again for 60 days to allow Williams to comply with the request to complete and return the form. ECF Nos. 21 and 22.

3

Bureau of Investigations ("FBI") for processing. *Id.* Williams was provided with the contact information for the FBI in the event he had questions regarding the 5 pages referred to that office. *Id.*

The ATF withheld information responsive to Williams's request based on the exemptions under 5 U.S.C. § 552(b)(3), (6), (7)(C) and (7)(E). *Id.* In her Declaration, Boucher provides a description of the search conducted to locate material responsive to Williams's request. Feb. 13, 2017 Boucher Decl. ¶¶ 9–16.

The Disclosure Division withheld "Firearms Trace[5] Summaries" from the responsive documents provided to Williams. Feb. 13, 2017 Boucher Decl. ¶ 20. Defendant relies upon the FOIA exemption from disclosure for the Firearms Trace Summaries. *Id.* (citing 5 U.S.C. § 552(b)(3)). That exemption "permits withholding of information prohibited from disclosure by another statute" when "the statute either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." *Id.* In Williams's case, the information was withheld on the first ground because it was subject to a statute prohibiting its disclosure. *Id.* ¶¶ 21–35; *see*, Def.'s Mem. 9 (citing Consol. Appropriations Act of 2010, Pub. L. No. 112-55, 125 Stat. 552 (2011)).

Boucher describes the information withheld from Williams under 5 U.S.C. § 552(b)(6) and (b)(7)(C), which protect personal privacy interests, Boucher Decl. ¶¶ 36–41, as follows:

> the names of Federal and local law enforcement agents and employees as well as information by which those individuals could be identified;

---

[5] "Trace information provides investigative leads to law enforcement and can link a suspect to a firearm in a criminal investigation. Firearm traces also help identify potential firearm traffickers, and detect in-state, interstate and international firearm trafficking patterns, including the sources and types of crime guns." https://www.atf.gov/news/pr/atf-releases-us-firearm-trace-data-2015.

> the names of Assistant United States Attorneys as well as information by which those individuals could be identified;
>
> the names of non-law enforcement third parties as well as information by which those individuals could be identified; and
>
> information relating to criminal enforcement cases of non-law enforcement third parties as well as information by which those third parties could be identified, including personal information, any statements made by those third parties, actions taken by those third parties, or specific knowledge that those third parties had.

*Id.* ¶ 42.

ATF withheld the law enforcement codes found on Treasury Enforcement Communications System ("TECS") documents pursuant to 5 U.S.C. § 552(b)(7)(E), which protects law enforcement techniques and procedures and guidelines for investigations. Boucher Decl. ¶¶ 49–50.

On October 14, 2016, the FBI confirmed by letter that they had provided a direct response to Williams regarding the five pages of documents referred by the ATF. Oct. 14, 2016 Ltrs., Def.'s Ex. 1-F. The FBI provided the five pages free-of-charge to Williams, *id.*, but deleted portions, as the FBI determined they were exempt from full disclosure under 5 U.S.C. § 552a(j)(2). *Id.*

Boucher states under oath that all information that both is responsive to Williams's request and can legally be released has been provided to Williams. Boucher Decl. ¶ 53.

## II. Standard of Review

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

### III. Discussion

#### A. FOIA

The Freedom of Information Act

> provides a mechanism for citizens to obtain documents from federal agencies, and grants federal district courts jurisdiction to review agency compliance with citizens' requests. *Reaves v. Jewell*, No. DKC–14–2245, 2014 WL 6698717, at *3 (D. Md. Nov. 26, 2014). Subject to certain statutory exemptions not at issue here, FOIA requires that federal agencies shall "upon any request for records which reasonably describe such records . . . make the records promptly available to any person." 5 U.S.C. § 522(a)(3)(A). In a lawsuit seeking the release of documents under FOIA, "[o]nce the records are produced, the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made." *Jacobs v. Fed. Bureau of Prisons,* 725 F.Supp.2d 85, 89 (D.D.C. 2010).

*Shortall v. Baltimore Dist. U.S. Army Corps of Engineers*, No. WMN-14-3904, 2015 WL 3545259, at *3 (D. Md. June 4, 2015); *see also Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994) (noting that, under FOIA, an agency must "provide information to the public on request if the request 'reasonably describes' the record sought and is made in accordance with published agency rules for making requests" (quoting 5 U.S.C. § 552(a)(3))).

6

"Under 5 U.S.C. § 552(a)(4)(B), federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980). "An agency acts improperly when a record is withheld outside one of the enumerated FOIA exceptions." *Kim v. Internal Revenue Serv.*, No. WMN-99-2096, 1999 WL 1424998, at *2 (D. Md. 1999) (quoting *Bartlett v. United States Dep't of Justice, Fed. Bureau of Investigation*, 867 F. Supp. 314, 315 (E.D. Pa. 1994)) (emphasis removed).

Monetary damages are not available under FOIA. *Moore v. United States*, No. WDQ-13-2353, 2014 WL 2575765, at *3 (June 6, 2014) (citing *Smith v. Commc'ns Works of Am.*, No. AW-12-0027, 2012 WL 6727150, at *4 (D. Md. Dec. 26, 2012), *aff'd sub nom. Smith v. E.E.O.C.*, 517 F. App'x 159 (4th Cir. 2013) (citing § 552(a)(4)(B))); *see also* 5 U.S.C. § 552(a)(4)(B) (stating that the court has jurisdiction (1) to enjoin the withholding of documents and (2) to order their production); *Ross v. United States*, 460 F.Supp.2d 139, 151 (D.D.C. 2006) (citing cases).

B. Privacy Act

The Privacy Act requires federal agencies to maintain records used in making "determinations about . . . individuals with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination [about the individual]." 5 U.S.C. § 552a(e)(5). "Unlike FOIA, the Privacy Act's primary purpose is not disclosure. Rather, 'the main purpose of the Privacy Act's disclosure requirement is to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies.'" *Blazy v. Tenet*,

194 F.3d 90, 96 (D.C. Cir. 1999) (quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456–57 (D.C. Cir. 1996)).

Where a violation of the Privacy Act concerns an agency's refusal of an individual's request for access to his or her own record, the remedy is injunctive relief. 5 U.S.C. § 552a(d)(1), (g)(1)(B), (g)(3). For other violations, including a wrongful refusal of an individual's request to amend a record, damages may be available where an individual actually is harmed by the violation. 5 U.S.C. § 552a (g)(1)(C)-(D), (g)(4)(A).

C. Analysis

ATF argues that its search was reasonable, Def.'s Mem. 7, and that its "withholding of duplicative material was reasonable," *id.* at 15; Williams does not disagree with either argument, Pl.'s Opp'n 5. Additionally, ATF asserts that its referral to the FBI of five document requests was proper. Def.'s Mem. 16. Williams concedes that the FBI's document production was proper. Pl.'s Opp'n 5.

ATF contends that monetary damages are not available under FOIA. Def.'s Mem. 18. Focusing on ATF's three alleged failures to respond, rather than its ultimate response, Williams maintains that he is entitled to damages. Pl.'s Opp'n 1–2. He cites a provision of the Privacy Act to refute the ATF's position that no monetary damages are available under FOIA. *Id*. at 2 (citing 5 U.S.C. § 552a(g)(4)(A) (providing for $1000 in damages upon proof of actual damages for violation of the statute)). Williams's reliance on this provision is misplaced. Damages under the Privacy Act require proof that an agency disclosed information that should not have been disclosed and did so willfully. *See* 5 U.S.C. § 552a(g)(4). Monetary damages for failing to respond or failing to disclose responsive records under FOIA are not available, *see* 5 U.S.C.

8

§ 552(a)(4)(B); *Moore*, 2014 WL 2575765, at *3, and Williams's claim for damages must be dismissed.

ATF also contends that it "properly withheld information under the applicable FOIA exemptions." Def.'s Mem. 8. And it insists that it provided "any reasonably segregable portion[s]" of the documents that were left after deleting exempt parts. *Id.* at 15–16. Williams argues that ATF's withholding of firearms trace summaries was improper because "[a]ll of the firearms information that the ATF is withholding from plaintiff were used as evidence in his [criminal] trial." Pl.'s Opp'n 3. Also, as he sees it, the redaction of one document that the ATF disclosed, *see* Report, Pl.'s Opp'n Ex. I, ECF No. 31-9, "goes well beyond" the protections that 5 U.S.C. § 552(b)(6) and (7)(C) provide. Pl.'s Opp'n 3–4. He argues that the full text of the document contains exculpatory evidence to which he is entitled. *Id*. at 4–5.

As the ATF correctly notes,

> In a FOIA case, the agency has the burden of showing that any identifiable document has either been produced or is subject to withholding under a FOIA exemption. *Havemann*, 629 Fed. Appx. at 539. To meet this burden, the agency may submit a declaration and a *Vaughn* index describing the withheld material with reasonable specificity and explaining the applicability of a FOIA exemption. *Ethyl Corp.*, 25 F.3d at 1249.2 The agency's justification for invoking a FOIA exemption is sufficient if it appears "logical" or "plausible." *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007). If the agency meets its burden, the burden shifts to the requester to suggest bad faith on the part of the agency. *Havemann*, 629 Fed. Appx. at 539.

Def.'s Mem. 8. For the reasons stated below, the ATF has established that recognized FOIA exemptions justify its decision not to release the information that Williams continues to seek.

### FOIA Exemptions

The ATF relies upon FOIA Exemptions 3, 6, 7(C), and 7(E) as justification for the documents withheld from Williams. Def.'s Mem. 8–15.

1. Exemption 3 (5 U.S.C. § 552(b)(3))

> Exemption 3 applies to records that are
>
>> specifically exempted from disclosure by statute (other than section 552b of [FOIA]), if that statute--
>> **(A)(i)** requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>> **(ii)** establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>> **(B)** if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to [§ 552(b)(3)].

5 U.S.C. § 552(b)(3). The information withheld pursuant to this exemption was the Firearms Trace Summaries. Feb. 13, 2017 Boucher Decl. ¶¶ 20 – 35. The exemption requires a two-step analysis to determine if it applies. *See Irons & Sears v. Damn*, 606 F.2d 1215, 1220 (D.C. Cir. 1979). The Court must determine (1) whether the statute upon which the exemption claim is based fits within the guidelines of Exemption 3, and (2) "whether the information sought falls within the boundaries of the non-disclosure statute." *Id*. "[I]n Exemption 3 cases, the agency, and then the court, must determine at the outset the status of the relevant statute and only then review its application to the particular matter sought to be disclosed. This extra, initial step can raise difficult issues of construction if the affected statute does not neatly reveal itself as a withholding or non-withholding statute." *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 333 (D.C. Cir. 1987).

The statute upon which the Exemption 3 non-disclosure is based in this case is the Consolidated Appropriations Act of 2012, Pub. L. No. 112-55, 125 Stat. 552 (2011), which provides:

> [D]uring the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the *Firearms Trace System* database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives or any information required to be kept by licensees pursuant to section 923(g) of title 18, United States Code, or required to be reported pursuant to paragraphs (3) and (7) of such section, except to: (1) a Federal, State, local, or tribal law

> enforcement agency, or a Federal, State, or local prosecutor; or (2) a foreign law enforcement agency solely in connection with or for use in a criminal investigation or prosecution; or (3) a Federal agency for a national security or intelligence purpose; unless such disclosure of such data to any of the entities described in (1), (2) or (3) of this proviso would compromise the identity of any undercover law enforcement officer or confidential informant, or interfere with any case under investigation; and *no person or entity described in (1), (2) or (3) shall knowingly and publicly disclose such data*; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives. (emphasis added).

112 Pub. L. 55, 4. The ATF further explains that Congress restricted funding and placed conditions on its ability to disclose firearms trace information that began in 2003 and evolved over time through amendments passed in 2004. Feb. 13, 2017 Boucher Decl. ¶¶ 23 – 25. Specifically, the Appropriations Act was amended in 2004 to prohibit production of firearms trace data pursuant to a subpoena, as well as disclosure of trace data in any civil action. *Id*. ¶¶ 24 – 25. The funding restriction on firearms trace data has been imposed "in perpetuity until specifically repealed," *id*. ¶¶ 27 – 28, 34, and more recent appropriations bills still include the funding restriction, showing that Congress still intends to prohibit the disclosure of trace information to the public. *Id*. ¶ 33; *see also Fowlkes v. BATFE*, 139 F. Supp. 3d 287, 291-92 (D.D.C. 2015) (noting that Exemption 3 prohibits disclosure of firearms trace data).

The non-disclosure of firearms trace data in response to Williams's FOIA request was proper under Exemption 3 as it is clearly prohibited by the Appropriations Act. Williams's assertion that the information withheld was used as evidence in his trial, *see* Pl.'s Reply 3, does not refute the ATF's position that they are prohibited from disclosing the information for a FOIA

response.  There is no exception allowing disclosure simply because the requester has "personal knowledge of the firearms" as asserted by Williams, *id.*

2. Exemption 6 and 7(C) (5 U.S.C. § 552(b)(6) and (b)(7)(C))

Information not subject to disclosure by virtue of Exemption 6 includes "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Exemption found at 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . ." 5 U.S.C. § 552(b)(7)(C). The Supreme Court described the differences in the two exemptions as follows:

> Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects. First, whereas Exemption 6 requires that the invasion of privacy be "clearly unwarranted," the adverb "clearly" is omitted from Exemption 7(C). This omission is the product of a 1974 amendment adopted in response to concerns expressed by the President. Second, whereas Exemption 6 refers to disclosures that "would constitute" an invasion of privacy, Exemption 7(C) encompasses any disclosure that "could reasonably be expected to constitute" such an invasion. This difference is also the product of a specific amendment. Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files.

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989) (footnotes omitted). A balancing test weighing individual privacy interests against the public's interest in disclosure of the information in question is required to determine if Exemptions 6 and 7(C) apply. *See Casa De Md., Inc. v. United States Dep't of Homeland Sec.*, 409 Fed. App'x 697, 700 (4th Cir. 2011). An agency may withhold information under the exemptions if disclosure would constitute an "unwarranted invasion of personal privacy." *Id*. "If the information withheld . . . was 'compiled for law enforcement purposes,' thus implicating

Exemption 7(C), then [this Court] would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. United States DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Exemption 7(C) requires consideration of the privacy interests of all third parties and non-disclosure of names and other information of all third parties appearing in law enforcement files are regularly found to fall squarely within both Exemption 6 and 7(C). *See Neely v. FBI*, 208 F.3d 461, 464-65 (4th Cir. 2000) (finding that "FBI agents, government employees, third-party suspects, and other third-party suspects, and other third parties mentioned or interviewed in the course of the investigation have well-recognized and substantial privacy interests").

Where, as here, the agency raises a legitimate privacy interest under Exemptions 6 and 7(C), the requester must then demonstrate (1) that "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and (2) that "the information is likely to advance that interest.'" *Casa De Md.*, 409 Fed App'x at 700 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). The assertion that agency officials engaged in misconduct must be supported by more than suspicion and requires production of "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Where there is no clear evidence that agency officials have engaged in the misconduct alleged, this Court must presume they have properly discharged their official duties. *Id*.

The information withheld by the ATF under Exemptions 6 and 7(C) in this case is the names and other identifying information of law enforcement personnel and non-law enforcement third parties in records that were compiled for law enforcement purposes. Feb. 13, 2017 Boucher

Decl. ¶¶ 36 – 48.  The ATF asserts that "information of law enforcement personnel was withheld because disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned, and subject them to embarrassment and unwarranted harassment in the conduct of their official duties and personal affairs."  Def.'s Mem. 12-13 (citing Feb. 13, 2017 Boucher Decl. ¶ 44).  Information concerning non-law enforcement third parties was withheld because the "ATF determined that . . .disclosure . . . could reasonably cause the third parties reputational harm, embarrassment, harassment, and possible reprisal," or "carr[y] a stigmatizing and negative connotation."  Feb. 13, 2017 Boucher Decl. ¶¶46 – 47.  The ATF further asserts that release of this information would serve any public interest that would outweigh the "substantial privacy interests" of the individuals.  *Id*. ¶¶ 45 – 47.

Williams bases his objection to the non-disclosure on a claim of improper conduct by the ATF and its employees with regard to his criminal case, but provides no specific evidence to support his suspicion that misconduct took place.  Pl.' Opp'n 4.  In his Opposition, Williams asserts that the redaction made on one particular document (Report, Pl.'s Opp'n Ex. I)[6] he received in response to his request "goes well beyond any of the rules in the protection of personal privacy, protecting investigative techniques, or protect[ing] personnel or medical files."  *Id.* at 3.  He states further that he does not want "names or addresses, he just wants the words spoken in that conversation."  *Id*. at 4.  Williams claims that the redaction is evidence of impropriety because the interview at issue was a conversation between Agent Swigert and Williams's girlfriend, Keri Crews, during which Swigert told Crews that he knew she was lying

---

[6] The document is an internal report detailing an interview relative to a firearm that was recovered pursuant to a search warrant executed at an apartment in Glen Burnie, Maryland. Report 2, Pl.'s Opp'n Ex. I.  It is entitled "Report of Investigation" and documents the July 22, 2011 interview of a person, whose name has been redacted.  *Id*.  It appears to correspond to Document 5 in the *Vaughn* Index provided by the ATF.  *See Vaughn* Index 4.

when she claimed the gun and prescription drugs recovered were hers. *Id*. According to Williams, Swigert ended the conversation with Crews when he gave her his business card and instructed her to call when she decided to tell the truth. *Id*.

Williams's suggestion that his general knowledge of what was said during the conversation between Swigert and Crews proves misconduct is without any objective indicia to support that conclusion. The ATF indicates that the redacted information was: "names of: ATF Special Agents, Task Force Officers, local law enforcement officers, and other third parties involved in the case either directly or indirectly," disclosure of which would "reasonably be expected to 'constitute an unwarranted invasion of personal privacy.'" *Vaughn* Index 4. In addition, "[I]nformation identifying third parties (including any statements made by these individuals), which include non-law enforcement personnel and individuals directly or indirectly involved in the case, was also withheld" because disclosure "would not further the purposes of the FOIA" and "could lead to an unwarranted invasion of personal privacy of the third parties." *Id*. The undisclosed content of the conversation falls within the exemption and was properly withheld and Williams's vague and generalized claim of misconduct does not overcome that justification. *See Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (concluding that requester's own affidavit alleging FBI misconduct fails to meet *Favish* standard where allegations of suspicious activity lacks substantiation). Williams has failed to satisfy the exacting standard required under *Favish*.

Moreover, Williams's claim that his knowledge about the conversation between Swigert and Crews, and the fact that other information withheld by the ATF was introduced during his criminal trial or was disclosed in another context, do not change the analysis. "An individual's interest in controlling the dissemination of information regarding personal matters does not

15

dissolve simply because that information may be available to the public in some form." *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994).

3.  Exemption 7(E) (5 U.S.C. §552(b)(7)(E))

When disclosure of "law enforcement records or information" would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions," FOIA exempts such records and information from disclosure, "if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption "sets a relatively low bar for the agency to justify withholding" and "only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). Further,

> [T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

*Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009).

The ATF invokes the 7(E) exemption to withhold law enforcement codes found on TECS documents. Feb. 13, 2017 Boucher Decl. ¶¶ 49 – 52. Before withholding the information, the ATF disclosure division consulted with U.S. Customs and Border Protection as the system owner of the TECS database. *Id*. ¶ 51. The ATF determined that disclosure of TECS information could allow individuals outside the agency to gain unauthorized access to sensitive investigative information and to circumvent the agency's functions. *Id*. ¶ 52. Further, access to this information could lead to the creation of false records by an individual and result in the

circumvention of the ATF's law enforcement duties. *Id*. Reliance on this exemption to withhold TECS information from the documents disclosed to Williams in response to his FOIA request is appropriate and Williams's conclusory assertion[7] that the information withheld contains exculpatory material, *see* Pl.'s Opp'n 5, does not refute the basis for withholding the information.

4.  Duplicative material

Withholding of duplicative material in response to a FOIA request is reasonable where, as here, the agency provides a detailed declaration under oath and a *Vaughn* Index. The *Vaughn* Index indicates that the following pages were withheld as duplicates:

1.  Document 8, pp. 39 - 41 (Report of Investigation 1, Initial report outlining criminal investigation involving Plaintiff) dated July 26, 2011: Duplicate of pages 33 - 35 of released information. *Vaughn* Index 6.

2.  Document 17, pp. 92 - 93 (Interview of [Redacted]) dated July 26, 2011: Duplicate of pages 31 - 32 of released information. *Vaughn* Index 11.

3.  Document 19, pp. 104 - 05 (Report of Investigation 3 regarding firearms interstate nexus based upon examination of three firearms) dated July 27, 2011: Duplicate of pages 14 – 15 of released information. *Vaughn* Index 12.

4.  Document 20, pp. 106 - 20 (ATF National Tracing Center – Firearms Trace Summaries and Details) dated July 13, 2011: Duplicate of pages 16 - 30 of ATF's documents that were withheld in full. *Vaughn* Index 12.

---

[7] Williams points to the redaction of information in a document disclosed to him by the ATF (Report, Pl.'s Opp'n Ex. I) and asserts that its disclosure would not violate Exemption 7(E) because it contains exculpatory evidence. Pl.'s Opp'n 5. Review of the document in question reveals that Exemption 7(E) was not relied upon for withholding the information redacted from the document; rather, that information was withheld under Exemption 6 and 7(C). Report, Pl.'s Opp'n Ex. I, *see also Vaughn* Index 4.

Williams does not dispute that duplicative material was properly withheld. Pl.'s Opp'n 5. To the extent Williams disputes the non-disclosure of the pages from Document 20 that were duplicative of a document withheld in full, this Court finds that the document was properly withheld under Exemption 3. *See Vaughn* Index 12 (indicating document withheld under Exemption 3). The ATF has provided sufficient information for Williams to identify the duplicate information withheld and its non-disclosure was proper.

In short, Williams has failed to demonstrate that the ATF failed to comply with the requirements of the FOIA in its response to his request for information, and ATF is entitled to judgment in its favor.

A separate Order follows.


<u>September 8, 2017</u>            \_\_\_/S/_____
Date            Paul W. Grimm
          United States District Judge